FILED'09 FEB 18 15:25USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RENA DELGADO,

    Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Commission,

    Defendant.

Civil No. 08-3047-CL

ORDER

CLARKE, Magistrate Judge.

    Plaintiff Rena Delgado brings this action pursuant to section 205(g) of the Social Security Act, as amended (Act), 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying plaintiff's claim for social security disability insurance benefits pursuant to 42 U.S.C. §§ 416 and 423. For the several reasons set forth below, the decision of the Commissioner should be reversed and the matter remanded for further proceedings.

## BACKGROUND

Plaintiff alleges disability commencing July 1, 2004. (Tr. 21.) Her application was denied. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on October 20, 2005. A hearing was held on July 12, 2006. (Tr. 409-442.) Plaintiff appeared and testified, represented by her attorney Arthur Stevens. A vocational expert also testified. On September 29, 2006, the ALJ rendered an adverse decision, and the Social Security Administration's Appeals Council (Appeals Council) denied plaintiff's request for review on February 28, 2008. (Tr. 21.)

At the time of the hearing and the ALJ's decision, plaintiff was thirty-four years old. Plaintiff has a high school education and completed 127 college credits. (Tr. 29.) The ALJ found that she has no past relevant work experience. (Tr.32) Plaintiff alleges disability as of July 1, 2004, due to a herniated disc, obesity, arthritis, a pinched nerve in the back, back pain, headaches, depression, knee problems, fallen arches, asthma, high cholesterol, dizziness, panic attacks, anxiety, sleep problems, a dislocated back, inflamed knees, weak ankles, loss of sensation on the right side of the body, problems with holding things, lack of concentration, and diabetes. (Tr. 24.) The relevant medical evidence is discussed below.

## STANDARDS

This court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court considers the record as a whole and weighs "both the evidence

2 - ORDER

that supports and detracts from the [Commissioner's] conclusion." <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence. <u>Ceguerra v. Sec'y of Health & Human Servs.</u>, 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." <u>Flake v. Gardner</u>, 399 F.2d 532, 540 (9th Cir. 1968); <u>see also</u> <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

<u>**COMMISSIONER'S DECISION**</u>

The initial burden of proof rests upon the claimant to establish disability. <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

3 - ORDER

A five-step sequential process exists for determining whether a person is disabled. <u>Bowen</u> <u>v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present case, the ALJ found that the plaintiff had not engaged in substantial gainful activity since July 1, 2004. (Tr. 23.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff has severe impairments of obesity, degenerative disc disease of the lumbar spine, bipolar disorder, panic disorder with agoraphobia, attention deficit hyperactivity disorder, and borderline personality disorder. (Tr. 23.) He found she had had medically determinable knee issues in the past but that there was no evidence to support the severity during the alleged period of disability. (Tr. 23.) Accordingly, the inquiry moved to step three.

Step three focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141. In this case, the ALJ found that plaintiff's impairments, either singly or in combination, were not severe enough to meet, or medically equal to, any of the listed impairments. (Tr. 23.)

4 - ORDER

In step four, the Commissioner determines whether the claimant has the residual functional capacity (RFC) to perform her "past relevant work." 20 C.F.R. § 404.1560(a). The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments. SSR 96-8p. "Past relevant work" refers to work that "was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). It does not consider "off-and-on" work during that period. Id. If she can perform past relevant work, then the Commissioner finds the claimant "not disabled." If the claimant cannot perform past relevant work, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that plaintiff retains an RFC to occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, stand and/or walk for six hours in an eight hour workday, sit for six hours in an eight hour workday, and do unlimited pushing and pulling. She needs to have a sit/stand option with a change of positions every 15-30 minutes. She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs and can occasionally balance, kneel, stoop, crouch, and crawl. She can do simple routine tasks. She can have only occasional public contact. (Tr. 24.) The plaintiff has no past relevant work experience.

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the claimant is deemed disabled. Here, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 32.) He determined that the plaintiff was not disabled. (Tr. 33.)

5 - ORDER

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by substantial evidence and because it is based on the application of improper legal standards. Plaintiff argues that the ALJ erred by

(1) improperly rejecting the opinions and ultimate conclusions of Plaintiff's treating physician Dr. Curtis Hanst concerning the severity of Plaintiff's impairments without stating clear and convincing reasons nor specific and legitimate reasons supported by substantial evidence in the record for doing so;

(2) not properly evaluating the combined effect of Plaintiff's medically verified impairments and considering whether taken together they result in limitations equal in severity to those specified in the Listing or resulting in limitations of disabling severity;

(3) not weighing the evidence as a whole

(4) rejecting the Plaintiff's pain and other subjective symptom testimony without making specific findings stating clear and convincing reasons

(5) improperly rejecting the lay testimony of Plaintiff's daughter Ruby Anderson without giving reasons germane to the witness

(6) basing his decision on an incomplete hypothetical that failed to accurately reflect Plaintiff's condition and disregarding part of the vocational expert's testimony. (Pl.'s Br. 5-6.)

### 1. ALJ Improperly Rejected Dr. Hanst's Opinion

Plaintiff argues that the ALJ improperly rejected Dr. Hanst's opinion that she qualifies for disability. (Pl.'s Br. 5.) Controlling weight will be given to a treating physician's opinion on the

6 - ORDER

issues of the nature and severity of a claimant's impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Secretary of HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and convincing reasons for doing so. Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984). If a treating or examining physician's opinion is contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for disregarding the opinion of the treating or examining physician. Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th Cir. 1996). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, then stating his interpretation, and lastly making findings. Cotton, 799 F.2d at 1408; Rodriguez, 876 F.2d at 762. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F. 3d at 831.

Dr. Hanst's opinion is well supported in the record and is not contradicted. On September 7, 2004, he concluded, "I am comfortable stating that she will not be effective in any significant capacity and this should be considered permanent due to her size and the extent of her physical

7 - ORDER

limitations." (Tr. 311.) On September 30, 2004, Dr. Hanst stated, "Rena is currently unable to work in any capacity. It is my opinion that she will not return to work and is permanently disabled." (Tr. 26.) In December of that same year, he again wrote in support of her application: "she has been my patient for the past 4 years and suffers from a variety of disabling conditions" which include degenerative disease of her lumbar spine, morbid obesity, and arthralgias in multiple joints. (Tr. 301.)

The ALJ asserts that Dr. Hanst "changed" his opinion. In a November 4, 2005 treatment note, Dr. Hanst explained that he did not find "adequate objective evidence to support disability and that in my opinion the best case would be for her to receiving [sic] some vocational training that would allow her to lead a happy, productive life. At age 34, she is far too young to sit around and do nothing." (Tr. 373.)

Plaintiff characterizes the statement differently than the ALJ, explaining that the chart note is "neither a revision (change) of Dr. Hanst's repeated opinions that Plaintiff was permanently disabled from work nor an opinion which may be used to discredit the Plaintiff's credibility." (Pl.'s Br. 13.) When taken in context, Dr. Hanst's statement does not reject or contradict his previous support of Plaintiff's disability. At this visit, Plaintiff had expressed to Dr. Hanst her concern about her disability application generally and questioned if Dr. Hanst believed her. She was under the impression that Dr. Hanst was only providing treatment because he had to. Dr. Hanst explained that her beliefs were unfounded, that he did not believe she was malingering, and that he would not be treating her condition if he did not believe it was warranted. (Tr. 373.) Nothing in the report suggests that he was changing his previously expressed opinions or that he intended to change her treatment.

8 - ORDER

Further, the record does not suggests that Plaintiff's condition has significantly improved since his September report recommending disability. Neurologist Dr. Maukonen examined Plaintiff shortly thereafter in January 2006 and confirmed Dr. Hanst's medical diagnoses. He concluded that she has chronic low back pain, numbness and tingling in her upper extremities, obesity, and probably migraine headaches. (Tr. 335.) He recommends that Plaintiff continue conservative treatment and pursue programs of physical therapy, exercise and weight loss. His report does not contradict Dr. Hanst's opinion.

The ALJ, however, only focuses on Dr. Hanst's November 2005 "changed" opinion, effectively disregarding Dr. Hanst's other evidence in the record. He does not provide clear and convincing reasons for doing so. His primary explanation for relying on one opinion over the other is by deeming an opinion "consistent" or "inconsistent" with the record. Such statements provide no rationale or reasoning other than his perception of the "bulk of the record." (Tr. 29.)

The ALJ also describes how other doctors were more skeptical of the Plaintiff's complaints. Dr. Zoolkoski did not recommend disability at age 32. (Tr. 326.) Dr. Peiron attributed Plaintiff's problems primarily to her obesity on April 28, 2003. (Tr. 196.) The state agency psychologist Dr. LeBray noted, "her allegations regarding her activities of daily living were much more limited than what she reported to her doctors." (Tr. 28, 245.)   And, the state agency physician also felt her complaints were inconsistent with overall medical evidence. (Tr. 258.)

These doctors do not clearly contradict Dr. Hanst's opinion. Even if they did, the ALJ did not set forth specific and legitimate reasons, based on substantial evidence for disregarding Dr. Hanst's opinions.

9 - ORDER

The issue of whether to accept or disregard Dr. Hanst's opinion should be remanded and the ALJ should be directed to either accept the treating physician's opinion or provide clear and convincing reasons for rejecting it.

### 2. ALJ Did Not Evaluate the Combined Effect of Plaintiff's Impairments

Plaintiff argues that the ALJ erred by failing to recognize the effect of the combination of her impairments.  In evaluating the plaintiff's impairments at step two, the ALJ must consider the combined impairments and assess the severity. 20 C.F.R. § 404.1520(d). "[T]he ALJ must consider the combined effect of all the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe.  Also, he is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. . . .  An impairment or combination of impairments can be found not severe only if the evidence establishes that a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations omitted). At step three, the ALJ must determine if the combination of impairments result in limitations equal in severity to those specified in the Listing or result in limitations of disabling severity.  20 C.F.R. § 416.926(c)(3); Lester 81 F.3d at 829-30; 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing).

In evaluating the equivalency of the combined impairments with those in the Listing, the ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (2005).  The Listing specifically notes, "the combined effects of obesity with musculoskeletal impairments can be greater than the effects of each

of the impairments considered separately" and the ALJ "must consider any additional cumulative effects of obesity." Listing , 1.00Q.

The ALJ found that the Plaintiff had severe impairments of obesity, degenerative disc disease of the lumbar spine, bipolar disorder, panic disorder with agoraphobia, attention deficit hyperactivity disorder, and borderline personality disorder. (Tr. 23.)   He did not determine that any of these impairments met the severity requirements in the Listing. (Tr. 23-24.)

Plaintiff asserts that the combination of her knee problems, back pain, mental disorders, and obesity meet the requirements of severity set forth in the Listing . (Pl.'s Br. 8.)  The Commissioner, to the contrary, believes that the Plaintiff has the burden to demonstrate that she meets or equals requirements under the Listing  and that the Plaintiff has not met this burden. (Def.'s Br. 15.)

Plaintiff argues that the combination of her impairments involves symptoms from several categories of musculoskeletal impairments and mental disorders under the Listing.  These include major dysfunction of the joints, specifically her knees, and disorders of the spine. (Pl.'s Br. 8. ) Plaintiff also argues that evaluating these disorders necessitates evaluating the combined, cumulative effects of her obesity.

The Plaintiff did present evidence to establish the equivalence of her combination of impairments with that of the Listing.   Dr. Hanst specifically noted, "[h]er back trouble is compounded by sever morbid obesity that has failed to improve despite medications, exercise programs, and dietary counseling." (Tr. 301.)   On September 7, 2004, Dr. Hanst remarked, "She has difficulty ambulating.  It interferes with her activity." (Tr. 311.)  Dr. Heaton also noted on May 26, 2004 that she "ambulates into the clinic with a waddling type gait." (Tr. 197.)  She requested a prescription for a cane in January 2004 from Dr. McMahon (Tr. 185) and was prescribed one by Dr.

11 - ORDER

Hanst on December 16, 2004.[1]  (Tr. 397.)  She requires assistance in walking and doing normal errands. Her daughter accompanies her while shopping and helps her get ready each day. (Tr. 433.)

Further, the Plaintiff is limited by her mental health disorders.  The ALJ recognized that Plaintiff had severe impairments of bipolar disorder, panic disorder with agoraphobia, attention deficit hyperactivity disorder, and borderline personality disorder. (Tr. 23.) Plaintiff and lay witness Ruby Anderson described the impact these impairments had on Plaintiff's life. (Tr. 420-24, 434-35.) Dr. Davis also confirmed the symptoms.  (Tr. 344-56.)

The ALJ erred in not evaluating the combination of Plaintiff's impairments. On remand, the ALJ should evaluate whether the combination of these impairments result in limitations equal in severity to those in the Listing or resulting in limitations of disabling severity.

### 3.  ALJ Improperly Rejected Plaintiff's Subjective Testimony

The Plaintiff argues that the ALJ improperly rejected her testimony. In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis of plaintiff's evidence. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); see also Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986).  First, the ALJ must determine that the claimant has met the threshold test of producing objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. Smolen, 80 F.3d at 1281. There must be no evidence of malingering.  Id.

Under the second part of the analysis, the Commissioner analyzes the credibility of the claimant's testimony regarding the severity of claimant's symptoms. Smolen, 80 F.3d at 1281.  The

---

[1]The court has reviewed the additional evidence submitted to the Appeals Council and considers it in its review. This includes transcript pages 386-397. See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993).

Commissioner can reject a claimant's symptom testimony only if he provides clear and convincing

reasons for doing so and makes specific findings. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir.

1993). General findings are insufficient; rather, the ALJ must identify what testimony is not credible

and what evidence suggests that the testimony is not credible. Reddick v. Chater, 157 F.3d 715, 722

(9th Cir. 1998). The Commissioner cannot reject a claimant's symptom testimony solely because

it is not fully corroborated by objective medical findings. Cotton, 799 F.2d 1403.

> In determining a claimant's credibility the Commissioner may consider, for example:
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for
> lying, prior inconsistent statements concerning the symptoms, and other testimony
> by the claimant that appears less than candid; (2) unexplained or inadequately
> explained failure to seek treatment or to follow a prescribed course of treatment; and
> (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom
> testimony, the ALJ must also consider the factors set out in SSR 88-13. . . . Those
> factors include the claimant's work record and observations of treating and examining
> physicians and other third parties regarding, among other matters, the nature, onset,
> duration, and frequency of the claimant's symptoms; precipitating and aggravating
> factors; functional restrictions caused by the symptoms; and the claimant's daily
> activities.

Smolen, 80 F.3d at 1284.

The Ninth Circuit explains that the ALJ must identify "what testimony is not credible and

what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir.

1995). Once that determination is made, the court defers to the ALJ. "If an ALJ explicitly discredits

the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's

credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).

The Ninth Circuit recognizes that a party claiming disability "should not be penalized for

attempting to lead a normal [life] in the face of [her] limitations." Reddick, 157 F.3d at 722 (omitted

cases cited). "'Disability does not mean that a claimant must vegetate in a dark room excluded from

all forms of human and social activity.'" <u>Cooper v. Bowen</u>, 815 F.2d 557, 561 (9th Cir.1987)

(quoting <u>Smith v. Califano</u>, 637 F.2d 968, 971 (3rd Cir. 1981)). It is only where the level of activity

is inconsistent with a claimed limitation that the activity has any bearing on credibility. <u>Reddick</u>,

157 F.3d at 722.

As set forth in <u>Smolen</u>, the ALJ can make a credibility determination based on "unexplained

or inadequately explained failure to seek treatment" as well as her daily activities. 80 F.3d at 1284.

"When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not

substitute our judgment for that of the Commissioner." <u>Batson v. Barnhart</u>, 359 F.3d 1190, 1195

(9th Cir. 2004).

Plaintiff has met the threshold test and produced objective medical evidence of underlying

impairments of degenerative disc disease of the lumbar spine, obesity, and knee pain. (Tr. 23.) The

ALJ determined that Plaintiff's credibility was limited, however, because she was not compliant with

her treatment, her daily activities were greater than her alleged level of disability, she failed to give

full effort on her exam, and generally her pain allegations were inconsistent with the record or

medical evidence. (Tr. 32.) After reviewing the record, the court is not convinced that the ALJ has

given clear and convincing reasons as required to reject Plaintiff's testimony.

As evidence of Plaintiff's non-compliance, the ALJ notes that Dr. McMahon stated she had

"failed" physical therapy and that she had not lost weight. The record shows, however, that Plaintiff

has attempted to lose weight but was unsuccessful. At the hearing, she described her eating habits

(Tr.428-29), and several doctors confirmed that she attempted weight management programs but to

no avail. (Tr. 441, 423.) Further, there is testimony that she has "truncal" obesity which compounds

her symptoms. (Tr. 441.) Dr. Hanst confirmed that it was very difficult for her to exercise to lose

14 - ORDER

weight because of the pain of her other impairments. (Tr. 294, 301.) Plaintiff has also presented

evidence that she is an active member of the Klamath Falls YMCA and swims for exercise when she

is able. (Tr. 394-95.) Given this evidence in the record, the ALJ's conclusion that she is not fully

participating in her treatment and thus less credible is not supported by clear and convincing

evidence.

The ALJ also takes issue with Plaintiff's reported activities: she attended her children's fair,

the Shady Pine Swine, even though she was instructed to stay off her knees, she was raising three

children, and she attended some schooling. (Tr. 32; Def.'s Br. 17.)

Plaintiff has provided evidence of her limitations at the fair. She submitted a letter from

Jennifer Baker who was the leader of the Shady Pine Swine. Ms. Baker explained that Plaintiff was

not able to help her children at the fair in a physical capacity. "It is my observation without the

constant help from Tina Petty . . . Rena's kids would have a very hard time completing the project.

. . . During the fair Rena usually brings the kid and is there for the show times to watch the kids but

she has never been able physically able [sic] to run the fight boards." (Tr. 396.)    Additionally,

Plaintiff's daughter Ruby confirmed that Plaintiff needs extra assistance to take care of her children's

basic needs. Her daughter explained that she helps her mother buy food for the family. She also

concluded generally that helping her mother is a full-time job, such that she needed to quit her own

part-time job to help out. (Tr. 435; Pl.'s Br. 15.)

If Plaintiff is attempting to lead a normal life, she should not be penalized for it. Daily

activities inconsistent with alleged disability may support a negative credibility finding, but sporadic

completion of daily living activities are not equivalent to full time employment. Vertigan v. Halter,

260 F.3d 1044, 1050 (9th Cir. 2001). A claimant "need not vegetate in a dark room," to be found

15 - ORDER

disabled. Reddick, 157 F.3d at 722 (citing Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)). Plaintiff's level of activity does not contradict with her medical records and does not warrant lessening her credibility. See Reddick, 175 F.3d at 722.

The ALJ also points to his own conclusion that the Plaintiff failed to give full effort on the exam: "the finding of giveway weakness suggests that claimant did not provide full effort on this exam." The Commissioner suggests that this is compelling evidence of lack of credibility, relying on the case Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002). (Def.'s Br. 17.) The facts of Thomas, however, are distinguishable from the Plaintiff's circumstances making Plaintiff's "giveway weakness" not compelling evidence. In Thomas, the ALJ found evidence that Plaintiff had failed to give maximum or consistent effort in two physical capacity evaluations. He found that these were "self-limiting behaviors" and efforts to "impede accurate testing" of her limitations. Thomas, 278 F.3d at 959. Here, the ALJ has only one medical evaluation of alleged "lack of full effort" and no other evidence of either malingering or self-limiting behaviors. (See Tr. 30.) The ALJ has not provided compelling evidence to lessen the Plaintiff's credibility.

### 4.  ALJ Did Not Evaluate the Record as a Whole

Plaintiff argues that the ALJ's decision was not based on the record as a whole. (Pl.'s Br.6.) The ALJ may not base his decision on a specific quantum of supporting evidence. The decision must be based on the record as a whole, weighing both evidence that supports and evidence that detracts. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

The ALJ places great weight on the "changed opinion" of Dr. Hanst. See Sec. 1. "[Dr. Hanst] wrote that the objective evidence did not support disability for the claimant. This is consistent with the bulk of the evidence and is given great weight." (Tr. 32.) Despite the fact that Dr. Hanst

16 - ORDER

qualified this statement by explaining that he did not believe Plaintiff was malingering, that he did not change or cease her treatment (Tr. 373), and that on several occasions he stated he believed Plaintiff qualified for disability (Tr. 294, 301, 308, 311), the ALJ relied on this statement rather than the record for his determination. Upon remand, the ALJ should base his decision on the record as a whole.

### 5. ALJ Improperly Rejected Lay Witness Testimony

Ruby Anderson, Plaintiff's daughter, testified as a lay witness at the Plaintiff's hearing. "Lay testimony as to claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and give reasons germane to each witness for doing do. One reason for which an ALJ may discount lay witness testimony is that it conflicts with medical evidence." Lewis v. Apfel, 236 F.3d 503, 510-511.

Defendant argues that the ALJ properly rejected the lay witness's testimony and summarized, "[c]laimant's daughter was credible . . . . However, the claimant's complaints seem exaggerated compared to the objective medical evidence." The Defendant then explained, "Plaintiff has failed to demonstrate that the lay witness statements of her symptoms or limitations were attributable to medically determinable impairments for which there was support in the record and that did not depend of Plaintiff's subjective complaints." (Def.'s Br. 18.)

The evidence in the record does support Ms. Anderson's testimony and the Plaintiff's assertions. Ms. Anderson testified that she helps the Plaintiff with her basic self care and daily activities. She observed Plaintiff's panic attacks and her migraine headaches. (Tr. 431-35.) The record shows that Plaintiff has mobility problems that require a cane, that she suffers from debilitating headaches, and that her medications cause drowsiness. (Tr. 397, 308, 301.) Ms.

17 - ORDER

Anderson's testimony does not conflict with the medical evidence, and the ALJ has not provided germane reasons to disregard her testimony.

### 6. The ALJ's RFC Finding and Vocational Expert Hypothetical Do Not Accurately Reflect the Plaintiff's Condition

Plaintiff argues that the ALJ provided an incomplete hypothetical to the VE (Pl.'s Br. 6). The Defendant counters that the RFC and the VE's hypothetical were both supported by substantial evidence. (Def. Br. 19.)

The Plaintiff's RFC is based on the her physical abilities, mental abilities, and certain other abilities. 20 C.F.R. § 404.1545(a)(4). An RFC is inaccurate if it is not based on substantial evidence. The ALJ uses this RFC to create a hypothetical question for the vocational expert. The assumptions in the hypothetical question must be supported by substantial evidence. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ may not incorporate limitations or restrictions that are not supported by the record. SSR 96-8p. A hypothetical which fails to include all of a claimant's limitations does not constitute substantial evidence. Magallanes, 881 F.2d at 756. The hypothetical must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true. "Substantial evidence may be produced through reliance on the vocational expert's response to a 'hypothetical question' but only 'if the question accurately portrays the [plaintiff's] individual physical and mental impairments.'" Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987) (citing Podedworny v. Harris, 745 F.2d 210, 218 (3rd Cir. 1984).

Much of what the Defendant cites as substantial evidence for the RFC has already been discussed and put into question. The Defendant relies on Dr. Hanst's "changed" opinion and Dr.

18  -  ORDER

McMahon's statement that Plaintiff "failed" physical therapy. (Tr. 20.) Because these issues and others have been remanded for further proceedings to develop the record, the RFC and the hypothetical question should also be considered on remand, and the ALJ should incorporate any changes in the previous steps of the analysis.

### 7. The Additional Records Should Be Considered Upon Remand

The court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is a good cause for failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. 405(g). "[T]he materiality of new evidence should not be tested as strictly in the administrative, as in the judicial context. Moreover, we have repeatedly emphasized that '[t]he Social Security Act is remedial, to be construed liberally.'" Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984) (citing Doran v. Schweiker, 681 F.2d 605, 607 (9th Cir. 1982)).

Plaintiff seeks to introduce additional evidence of a past prescription, evaluation for and documentation of physical therapy, her membership at the YMCA, description of her involvement at her children's fair, and a prescription for a cane. The Plaintiff argues that this evidence addresses issues raised at the hearing and/or in the ALJ's written decision. (Pl.'s Br. 14.) Further, she argues that there was good cause in her failure to provide the evidence initially because she in "good faith ascertained that the records of all of her treating providers had been requested and provided." (Pl.'s Reply Br. 9.) "[O]nce the issue was raised by the ALJ, Plaintiff investigated the matter and was able to find and submit to the Appeals Council a copy of the prescription for a cane." (Id. at 11.)

The Defendant argues that this new evidence was not material, but the court disagrees. The ALJ found reasons to limit the Plaintiff's credibility because she did not have a prescription for a

19 - ORDER

cane, she did not give full effort on a physical exam, that she did not attempt to lose weight, and that she attended her children's fair. (Tr. 25, 28, 30, 32.)  Plaintiff's additional materials clarify the issues and challenge these conclusions, which the ALJ used in making his decision.

Upon remand, the Commissioner should consider the additional evidence provided to the Appeals Council.

## CONCLUSION

Because the ALJ did not properly apply the correct legal standards and because the decision is not based on substantial evidence, the Commissioner's decision must be reversed and remanded for further proceedings consistent with this order.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing Stone v. Heckler, 761 F.2d 530 (9th Cir. 1985)).  Remand is appropriate where further proceedings would be likely to clear up defects in the administrative proceedings, unless the new proceedings would simply serve to delay the receipt of benefits and are unlikely to add to the existing findings. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 976 (9th Cir. 2000).

In some circumstances, where the ALJ has improperly credited testimony or failed to consider it, the Ninth Circuit has credited the rejected testimony.  See Smolen, 80 F.3d at 1292 (claimant's subjective symptom testimony, physicians' opinions, and lay testimony) (and cases cited); Lester, 81 F.3d at 834 (treating and examining physicians' opinions).  However, in Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003), the Ninth Circuit determined that the "crediting as true" doctrine is not mandatory and the court has some flexibility in applying the doctrine. (Citing Dodrill,

20 - ORDER

12 F.3d 915; Nguyen, 100 F.3d 1462; Byrnes v. Shalala, 60 F.3d 639 (9th Cir. 1995); Bunnell v.

Sullivan, 947 F.2d 341 (9th Cir. 1991), in which the courts remanded for credibility findings).

On this record, the Court exercises its discretion and remands for further proceedings. See

Stout, 454 F.3d at 1053-54, 1056-57 (remanding for further proceedings despite vocational expert

testimony that constant supervision is unacceptable in competitive employment); Connett, 340 F.3d

at 876.

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of

the Commissioner is reversed and the matter is remanded for further administrative proceedings.

If the ALJ rejects the opinions of Dr. Hanst, he must provide clear and convincing reasons for doing

so, supported by substantial evidence in the record. He should evaluate the combination of Plaintiff's

impairments for whether they result in limitations equal in severity to those in the Listing or resulting

in limitations of disabling severity. He should weigh the evidence as a whole. If he rejects the

Plaintiff's testimony, he must make specific findings and state clear and convincing reasons. To

reject lay witness testimony, he must give germane reasons for the witness, and he must revise the

RFC and hypothetical, consistent to changes in his decision from previous steps. The additional

records submitted to the Appeals Council should also be included in his evaluation.

DATED this _____ day of February, 2009.

MARK D. CLARKE

United States Magistrate Judge

21 - ORDER